## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>JUNIPER NETWORKS, INC.,<br><br>       Defendant. | Civil Action No. _____<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff FLEET CONNECT SOLUTIONS LLC ("FCS" or "Plaintiff") files this complaint against JUNIPER NETWORKS, INC. ("Juniper" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 6,549,583 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| 2. | 6,633,616 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 3. | 7,058,040 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |

| | Patent No. | Reference |
|---|---|---|
| 4. | 7,260,153 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 5. | 7,656,845 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 6. | 7,742,388 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 7. | 8,005,053 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |

2.     Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas (Travis County).

4.     On information and belief based on public information, Defendant is a corporation organized under the laws of the Delaware.

5.     On information and belief based on public information, Defendant maintains its principal place of business 1133 Innovation Way Sunnyvale, California, 94089 (Santa Clara County).

6.     On information and belief based on public information, Defendant may be served through its agent for service, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## JURISDICTION AND VENUE

7.     FCS repeats and re-alleges the allegations in Paragraphs above as though

fully set forth in their entirety.

8.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Georgia and in this District; and (iii) having an interest in, using or possessing real property in Georgia.

10.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

11.     Defendant has purposefully directed infringing activities at residents of the State of Georgia, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District.  For example, upon information and belief, Defendant has placed and

continues to place its products into the stream of commerce *via* an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Georgia. Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Georgia Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Georgia residents and consumers.

12. Defendant commits acts of infringement from this District, including, but not limited to, use of the products identified below.

13. Defendant has authorized sellers, sales representatives, and/or partners that offer and sell products identified in this Complaint throughout the State of Georgia, including in this Judicial District, and to consumers throughout this Judicial District.

14. Therefore, venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b).

## **THE ACCUSED PRODUCTS**

15. FCS repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

16. Defendant uses, causes to be used, provides, supplies, or distributes one

or more computing devices, including, but not limited to the following "Accused Products":

- Those Juniper access points comprising WiFi and/or LTE and Bluetooth functionality (the "Juniper Wireless Access Points"[1]), including at least the following:

  o AP12 Access Point

  o AP24 Access Point

  o AP32 Access Point

  o AP33 Access Point

  o AP34 Access Point

  o AP45 Access Point

  o AP63 Access Point

- Those Juniper routers comprising WiFi and/or LTE functionality (the "Juniper Session Smart Routers"[2]), including at least the following:

  o SSR120

  o SSR130

- Those Juniper SRX Series Firewalls comprising Wi-Fi and/or LTE

---

[1] *See e.g.,* https://www.juniper.net/us/en/products/access-points.html (last visited May 1, 2024)
[2] *See e.g.,* https://www.juniper.net/us/en/products/routers/session-smart-router.html (last visited May 1, 2024)

functionality (the ""Juniper Firewalls"[3]).

17.    On  information  and  belief,  the  Accused  Products  perform  wireless communications  and  methods  associated  with  performing  and/or  implementing wireless communications including, but not limited to, wireless communications and methods  pursuant  to  various  protocols  and  implementations,  including,  but  not limited to, Bluetooth, IEEE 802.11, and various subsections thereof, including, but not limited to, 802.11ac, 802.11b, and 802.11n.

18.    On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.[4]

19.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

20.    By letter dated February 21, 2024 addressed to Timothy Bunting, Head of AMER Legal, Associate General Counsel, and Senior Director for Juniper Networks (the "Notice Letter"), Defendant received notice of its infringement FCS's patents and, including the Asserted Patents.

---

[3] *See e.g.,* https://www.juniper.net/us/en/products/security/srx-series.html (last visited May 2, 2024).

[4] *See e.g.,* "AP24 Access Point Datasheet" (© 2024); available at https://www.juniper.net/content/dam/www/assets/datasheets/us/en/access-points/ap24-access-point-datasheet.pdf  (last visited May 1, 2024), and "SSR100 Line Of Routers Datasheet" (© 2024); available at https://www.juniper.net/content/dam/www/assets/datasheets/us/en/routers/ssr100-line-of-routers-datasheet.pdf (last visited May 1, 2024) (last visited May 1, 2024)

## COUNT I:     INFRINGEMENT OF U.S. PATENT NO. 6,549,583

21.     FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

22.     The USPTO duly issued U.S. Patent No. 6,549,583 (the "'583 patent") on April 15, 2003, after full and fair examination of Application No. 09/790,429 which was filed February 21, 2001.  The '583 patent is entitled "Optimum Phase Error Metric For OFDM Pilot Tone Tracking In Wireless LAN."

23.     FCS owns all substantial rights, interest, and title in and to the '583 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

24.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '583 patent.

25.     The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that include inventive components that improve upon the function and operation of preexisting error estimation methods.

26.     The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim

limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.     Defendant has directly infringed the '583 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

28.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent. For example, Defendant, using the Accused Products, performs a method comprising a communication device storing data encoded for a plurality of different wireless protocols, the communication device including a plurality of wireless transceivers, each of which is configured to transmit data according to a corresponding one of the plurality of different wireless protocols where the communication device selects one of the plurality of different wireless protocols and encodes data of an unselected one of the plurality of different wireless protocols into the selected wireless protocol, and transmits the encoded data using the one of the plurality of wireless transceivers corresponding to the selected wireless protocol.

29.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:    INFRINGEMENT OF U.S. PATENT NO. 6,633,616

30.    FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

31.    The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081 which was filed August 21, 2001.  The '616 patent is entitled "OFDM Pilot Tone Tracking For Wireless LAN."

32.    FCS owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

33.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

34.    The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

35.    The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim

limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.     Defendant has directly infringed the '616 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

37.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent. For example, Defendant, using the Accused Products, performs a method comprising a communication device storing data encoded for a plurality of different wireless protocols, the communication device including a plurality of wireless transceivers, each of which is configured to transmit data according to a corresponding one of the plurality of different wireless protocols where the communication device selects one of the plurality of different wireless protocols and  encodes data of an unselected one of the plurality of different wireless protocols into the selected wireless protocol, and transmits the encoded data using the one of the plurality of wireless transceivers corresponding to the selected wireless protocol.

38.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III:   INFRINGEMENT OF U.S. PATENT NO. 7,058,040

39.    FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

40.    The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718 which was filed September 21, 2001.  The '040 patent is entitled "Channel Interference Reduction."

41.    FCS owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

42.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

43.    The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting data transmission methods.

44.    The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim

limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

45.     Defendant has directly infringed and continue to directly infringe the '040 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell Juniper Wireless Access Points identified above.

46.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent.  For example, Defendant, using the Juniper Wireless Access Points, performs a method for data transmission over first and second media that overlap in frequency.  The method includes computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service.

47.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV:   INFRINGEMENT OF U.S. PATENT NO. 7,260,153

48.     FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

49.     The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.  The '153 patent is entitled "Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels."

50.     FCS owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce t said patent against infringers and to collect damages for all relevant times.

51.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

52.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of then-existing data transfer rates and systems.

53.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of

the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.     Defendant has directly infringed the '153 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

55.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.  For example, Defendant, using the Accused Products, performs a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the sub-streams, estimates the channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams.

56.     Defendant has also indirectly infringed and continues to indirectly infringe the '153 patent by inducing others to directly infringe the '153 patent. Defendant has induced distributors and end-users, including, but not limited to,

Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '153 patent, including, for example, claim 1 of the '153 patent.  Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '153 patent.  Defendant's inducement is ongoing. *See e.g.,* Paragraph 18.

57.    Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '153 patent.  Defendant has contributed to the direct infringement of the '153 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses

other than ones that infringe one or more claims of the '153 patent, including, for example, claim 1 of the '153 patent. The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See e.g.,* Paragraph 18.

58.     Defendant had knowledge of the '153 patent at least as of the date the original complaint was filed and perhaps as early as Defendant's receipt of the Notice Letter.

59.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

60.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

61.     Defendant's direct infringement of the '153 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

62.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty,

together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '153 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT V:     INFRINGEMENT OF U.S. PATENT NO. 7,656,845

64.     FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

65.     The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006.  The '845 patent is entitled "Channel Interference Reduction."  A Certificate of Correction was issued on November 30, 2010.

66.     FCS owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce t said patent against infringers and to collect damages for all relevant times.

67.     FCS or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

68.     The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

69.     The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

70.     Defendant has directly infringed the '845 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing Juniper Wireless Access Points identified above.

71.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claims 1 and 12 of the '845 patent.  For example, the Juniper Wireless Access Points used by Defendant provide a method for performing and/or a system comprising a processor, a first transceiver configured to communicate *via* a first medium, a second transceiver configured to

communicate *via* a second medium, wherein at least one of the first transceiver and the second transceiver is configured to retry transmission of a packet at a lower rate if a prior transmission of the packet is not acknowledged, an allocation unit configured to dynamically allocate data channels to one of the first medium and the second medium based upon a desired level of service.

72.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI:     INFRINGEMENT OF U.S. PATENT NO. 7,742,388**

73.     FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

74.     The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005.  The '388 patent is entitled "Packet Generation Systems and Methods."

75.     FCS owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

76.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

77.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

78.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

79.     Defendant has directly infringed and continue to directly infringe one or more claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products identified above.

80.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  For example, Defendant, using the Accused Products, performs a method including generating a packet with a size corresponding to a protocol used for a network

transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

81.     Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendant has induced and continue to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  Such steps by Defendant has included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant has been performing these steps, which constitute induced infringement

with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  Defendant's inducement is ongoing.  *See e.g.,* Paragraph 18.

82.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent.  Defendant has contributed and continue to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.  *See e.g.,* Paragraph 18

83.     Defendant had knowledge of the '388 patent at least as of Defendant's receipt of the Notice Letter.

84.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

85.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

86.    Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

87.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

88.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT VII:    INFRINGEMENT OF U.S. PATENT NO. 8,005,053**

89.    FCS repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

90.    The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010.   The '053 patent is entitled "Channel Interference Reduction."

91.    FCS owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

92.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

93.    The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods that reduce signal interference.

94.    The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim

limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

95.     Defendant has directly infringed the '053 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Juniper Wireless Access Points identified above.

96.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 and 10 of the '053 patent.  For example, Defendant, using the Juniper Wireless Access Points, performs a method comprising and/or offers a communication device for storing data encoded for a plurality of different wireless protocols, the communication device including a plurality of wireless transceivers, each of which is configured to transmit data according to a corresponding one of the plurality of different wireless protocols where the communication device selects one of the plurality of different wireless protocols and encodes data of an unselected one of the plurality of different wireless protocols into the selected wireless protocol, and transmits the encoded data using the one of the plurality of wireless transceivers corresponding to the selected wireless protocol.

97.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**JURY DEMAND**

98.     FCS hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

99.     FCS requests that the Court find in its favor and against Defendant, and that the Court grant FCS the following relief:

a.  Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.  A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '153 patent and the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.  Judgment that Defendant account for and pay to FCS all damages to and costs incurred by FCS because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements of the '153 patent and the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>May 2, 2024</u>          Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA507179)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

\* Admitted to the Northern District of Georgia

<u>**Attachments**</u>
1. Civil Cover Sheet
2. Proposed Summons